**Affirmed and Memorandum Opinion filed September 27, 2011.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-10-00610-CV

---

**LENTZ ENGINEERING, L.C., Appellant**

**V.**

**ALDEN BROWN, Appellee**

---

**On Appeal from the County Civil Court at Law No. 3
Harris County, Texas
Trial Court Cause No. 923819**

---

## MEMORANDUM OPINION

Appellant Lentz Engineering, L.C. sued appellee Alden Brown for breach of contract and quantum meruit. Lentz claimed that Brown was liable as a partner in a general partnership with William Wilkins, who contracted for Lentz's services. After a bench trial, the court rendered a final judgment that Lentz take nothing from Brown. In three issues, Lentz argues that Brown judicially admitted he was a partner with Wilkins, and that the evidence is legally and factually insufficient to support the trial court's judgment. We affirm.

## BACKGROUND

Wilkins approached Brown in late 2004 or early 2005 with a proposal to purchase and develop a 20-acre tract of land in Manvel, Texas. Wilkins entered into a contract with a third party in January 2005 to purchase the property. Brown and Wilkins met with an attorney in February and agreed to form a Texas limited liability company (LLC). Brown gave Wilkins $400,000 in March to purchase the property, and Wilkins acquired the property for himself on April 13, 2005. One day later, the attorney filed articles of organization for Manvel Villa Development, LLC, which identified Brown and Wilkins as managers. Brown and Wilkins also established a bank account for the LLC.

Brown became suspicious of Wilkins's conduct during the summer and undertook efforts to recover his money and obtain title in the property. Meanwhile, Wilkins entered into a contract with Lentz in June 2005 for Lentz to provide engineering services related to the property. Lentz performed these services but did not turn over the work product because Lentz was never paid.

Lentz sued Brown and Wilkins for breach of contract and quantum meruit, and Wilkins defaulted. After a bench trial, the court rendered judgment that Lentz take nothing from Brown. The court issued findings of fact and conclusions of law, specifically finding that (1) Brown and Wilkins agreed to establish the LLC for the purpose of owning and developing the property; (2) they never were general partners; and (3) Brown could not be personally liable for the contract between Lentz and Wilkins. Lentz appealed.

## JUDICIAL ADMISSION

In its first issue, Lentz argues that the trial court erred in finding that there was no general partnership between Brown and Wilkins because Brown judicially admitted in a motion for summary judgment that a partnership existed between Brown and Wilkins. Brown responds that he did not judicially admit this fact, and regardless, Lentz waived

the right to rely on any admission because Lentz did not object to contrary evidence at trial.

To be considered a judicial admission, a party's statement must be clear, deliberate, and unequivocal. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000). If the admission is not retracted, it will have conclusive effect and bar the admitting party from later disputing the admitted fact. *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001); *Griffin v. Superior Ins. Co.*, 338 S.W.2d 415, 418 (Tex. 1960). A statement made in a motion for summary judgment may constitute a judicial admission. *Sherman v. Merit Office Portfolio, Ltd.*, 106 S.W.3d 135, 140 (Tex. App.—Dallas 2003, pet. denied); *see Valdes v. Moore*, 476 S.W.2d 936, 940 (Tex. Civ. App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.). But we consider the entire motion and other documents in the record to determine whether a statement is clear, deliberate, and unequivocal. *See In re Spooner*, 333 S.W.3d 759, 764–65 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding [mand. denied])) (finding no admission when the statement was read "in the context of the summary judgment proceeding [and] the mandamus records as a whole"); *Highlands Ins. Co. v. Currey*, 773 S.W.2d 750, 755 (Tex. App.—Houston [14th Dist.] 1989, writ denied) (finding no admission based on a statement made in a motion to dismiss because the party specifically denied the same fact in its first amended answer and counterclaim); *Barstow v. State*, 742 S.W.2d 495, 509 (Tex. App.—Austin 1987, writ denied) (finding no admission because the remainder of the motion contained conflicting statements).

Here, Brown's motion for summary judgment included the following statements: (1) "Although Wilkins and Brown entered into a partnership to acquire the Manvel property, that partnership was not formed until March 2005"; (2) "In March 2005, Brown and Wilkins entered into a business partnership where Brown agreed to advance funds to Wilkins for acquisition of the Manvel Property"; and (3) "Wilkins and Brown did not establish their partnership until March 2005."

In his summary judgment reply brief, Brown argued that "there was no valid partnership" and he and Wilkins "never had a valid partnership." Brown also filed an amended answer and counterclaim, specifically denying the existence of a partnership between him and Wilkins. In the motion for summary judgment itself, Brown argued that he was not in a general partnership with Wilkins at the time Wilkins entered into the contract with Lentz — the key time period for determining whether Brown could be liable for Wilkins's conduct.[1] Viewed in this context, the statements at issue are not clear, deliberate, and unequivocal.

Even if the statements at issue could be construed as judicial admissions, Lentz waived this argument by failing to object to the admission of evidence contrary to the alleged judicial admission. *See, e.g.*, *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 769 (1983) ("The party relying on his opponent's pleadings as judicial admissions of fact, however, must protect his record by objecting to the introduction of evidence contrary to that admission of fact and by objecting to the admission of any issue bearing on the fact admitted."); *Field v. AIM Mgmt. Group, Inc.*, 845 S.W.2d 469, 473 (Tex. App.—Houston [14th Dist.] 1993, no writ) (holding that the trial court erred when granting a directed verdict based on a judicial admission because the appellee waived the judicial admission argument "when evidence contrary to the purported admission [was] heard without objection"). Lentz did not object to the admission of any evidence at trial — including the following evidence contrary to the alleged admission: (1) Wilkins's testimony that the LLC was formed for "continuing on with the project" and "to finish the project"; (2) Brown's testimony that he and Wilkins formed the LLC "as a proper business protocol" and that they "never agreed to be partners in the first place"; and (3) the certificate of organization for the LLC, which showed Brown and Wilkins as managers and was dated prior to the contract between Wilkins and Lentz.

---

[1] Lentz originally alleged in its petition that it entered into a contract with Wilkins on or about December 2004, but in response to Brown's motion, Lentz argued that the contract was entered into in June 2005 — after the "admission" by Brown that a partnership was formed in March 2005.

Lentz's first issue is overruled.

## LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

In its second and third issues, Lentz challenges the legal and factual sufficiency of the evidence supporting various findings of fact and conclusions of law made by the trial court. Essentially, Lentz challenges the trial court's factual determination that Brown and Wilkins were not partners in a general partnership at the time Lentz entered into a contract with Wilkins.[2]

---

[2] In particular, Lentz challenges the following findings and conclusions:

**Findings of Fact**

. . .

5. . . . Wilkins and Brown entered into an agreement to establish a limited liability company and agreed that the Manvel Property would be owned and developed by the limited liability company.

6. . . . Wilkins and Brown met with an attorney to establish a limited liability company called Manvel Villa Development, LLC, for purposes of owning and developing the Manvel Property.

. . .

9. . . . [U]sing the funds advanced by Brown and in furtherance of his scheme, Wilkins acquired the Manvel Property for himself.

10. Wilkins never had any intention of giving Brown and interest in the Manvel Property as promised. Instead, Wilkins intended to acquire the Manvel Property in his own name and for his own use and benefit.

. . .

24. The only business relationship Brown entered into with Wilkins with respect to the Manvel Property was to establish a limited liability company for the purposes of owning and developing the Manvel Property. Brown and Wilkins were never general partners.

. . .

**Conclusions of Law**

1. Wilkins alone is liable to Lentz Engineering for breach of contract.

2. Brown is entitled to a declaration that (i) Brown never entered into a general partnership with Wilkins and/or any company owned and/or operated by Wilkins, including but not limited to W.C. Financial Corp. and W.C. Mortgage, (ii) Brown's only agreement with Wilkins regarding the Manvel Property was to form Manvel Villa Development, LLC, and to own and develop the Manvel Property through Manvel Villa Development, LLC, and (iii) Brown is not personally liable for any contracts entered into

## I. Principles of Partnership and LLC Formation and Liability

A general partnership is an association of two or more persons to carry on a business for profit as owners, regardless of whether the persons intend to create a partnership or whether the association is actually called a "partnership." Tex. Bus. Orgs. Code Ann. § 152.051(b) (Vernon 2009). Factors indicating that persons have created a partnership include:

(1) receipt or right to receive a share of profits of the business;

(2) expression of an intent to be partners in the business;

(3) participation or right to participate in control of the business;

(4) agreement to share or sharing:

  (A) losses of the business; or

  (B) liability for claims by third parties against the business; and

(5) agreement to contribute or contributing money or property to the business.

*Id*. § 152.052(a). Whether a partnership exists depends on the totality of the circumstances. *Ingram v. Deere*, 288 S.W.3d 886, 903–04 (Tex. 2009). Although conclusive evidence of all of these factors will establish the existence of a partnership as a matter of law, *id.* at 904, evidence of all of these factors is not required to show the existence of a partnership, *id.* at 896. The absence of evidence of all of the factors will preclude the finding of a partnership. *Id.* at 904. And even conclusive evidence of only one of the factors usually will be insufficient to show the existence of a partnership. *Id.*

An association or organization is not a partnership if it was created under the statute governing the formation of LLCs. *See* Tex. Bus. Orgs. Code Ann. § 152.051(c). An LLC is formed when a certificate of formation is filed with the Secretary of the State of Texas. *See id*. §§ 1.002(22), 3.001(c), 4.051.

---

by Wilkins, including the contract Wilkins entered into with Lentz Engineering at issue in this case.

Partners in a general partnership may be held personally liable for debts or obligations of the partnership. *See id.* § 152.304. But managers or members of an LLC generally may not be held personally liable for the debts or obligations of the company. *See id.* § 101.114.

## II. Legal Sufficiency

When conducting a legal sufficiency review, we view the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit evidence favorable to the verdict if reasonable fact finders could and disregard contrary evidence unless reasonable fact finders could not. *Id.* at 827. When an appellant challenges the legal sufficiency of an adverse finding on an issue for which the appellant had the burden of proof, the appellant must demonstrate that the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *TH Invs., Inc. v. Kirby Inland Marine, L.P.*, 218 S.W.3d 173, 189 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). The appellant must show that there is no evidence to support the fact finder's finding and that the evidence conclusively establishes the opposite of the finding. *See Dow*, 46 S.W.3d at 241 (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989)); *TH Invs.*, 218 S.W.3d at 189–90. The ultimate test for legal sufficiency is whether the evidence would enable a reasonable and fair-minded fact finder to reach the verdict under review. *Wilson*, 168 S.W.3d at 827.

Here, Lentz had the burden to establish the existence of a partnership. *See Valero Energy Corp. v. Teco Pipeline Co.*, 2 S.W.3d 576, 585 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Negrini v. Plus Two Adver., Inc.*, 695 S.W.2d 624, 631 (Tex. App.—Houston [1st Dist.] 1985, no writ). Thus, Lentz must show on appeal that there is no evidence to support the trial court's finding and that all of the evidence conclusively establishes the existence of a partnership between Brown and Wilkins when Lentz and Wilkins entered into a contract. Lentz has not done so.

First, there is some evidence to support the trial court's finding of no partnership. Both parties expressed intent to form an LLC. Wilkins testified that he and Brown established an LLC "[f]or purposes of developing the Manvel property," "[c]ontinuing on with the project," and "to finish the project." The purpose of the meeting with an attorney in February 2005 was in part to establish the LLC. Brown testified that Wilkins recommended forming an LLC "as proper business protocol." Brown also testified, "[W]e never agreed to be partners in the first place. I mean, we — we were doing the project together. We weren't planning on doing this, you know, staying together as a partnership or anything like that." Wilkins testified he opened a bank account in the name of the LLC "to do the Manvel," and "[t]he account was to finish the project." The certificate of organization for the LLC became effective on April 14, 2005 — before the date on which Lentz entered into a contract with Wilkins.

Although there is some evidence pointing to the existence of a partnership, all of the evidence does not conclusively establish this fact. There is uncontroverted evidence that Brown and Wilkins agreed to split profits from the development and sale of the property "50/50" after Brown recovered his initial investment costs. There also is uncontroverted evidence that Brown and Wilkins both participated or had a right to participate in control of the business: they testified that Wilkins initially was to do all of the legwork in connection with purchasing and developing the property, but Brown later sent a cease-and-desist letter to Wilkins claiming that all expenses had to be approved by Brown in writing. Further, there is evidence of Brown's expression of intent to be partners.[3] But the evidence of intent is controverted, as discussed above, by Brown's testimony at trial and the formation of the LLC.

---

[3] In July 2005, Brown filed a sworn "declaration of ownership" in an attempt to have the property put in his name; he claimed a 50 percent ownership interest in the property and stated that he had "an agreement with William Wilkins to be partners in connection with the purchase, development and/or the sale of real estate." In a later suit against Wilkins to recover the property, Brown alleged that he and Wilkins "entered into a business partnership, where Brown agreed to entrust $605,000 to Wilkins for the acquisition of certain real estate."

Thus, we are left with uncontroverted evidence of only two of the factors: splitting profits and participating in control of the business. We conclude that the totality of the circumstances does not conclusively establish the existence of a partnership in this case. *Cf. Sysco Food Servs. of Austin, Inc. v. Miller*, No. 03-03-00078-CV, 2003 WL 21940009, at *3–4 (Tex. App.—Austin Aug. 14, 2003, no pet.) (mem. op.) (holding, prior to the totality-of-the-circumstances test, the appellant failed to conclusively establish the existence of a partnership and individual liability for the appellee; although there was some evidence of sharing profits and mutual control over the business, there was no evidence of sharing losses or appellee's authorization to be liable as a partner, and the appellant did not enter into a contract with the appellee's alleged partner until after the formation of an LLC and without any representation that the appellee was a general partner).

Lentz also argues that the formation of an LLC does not displace a preexisting partnership, and that Brown and Wilkins's conduct before formation of the LLC established a partnership. For example, Lentz notes that Brown transferred money to Wilkins in March 2005 and Wilkins purchased the property shortly before the LLC was formed. Although courts have held promoters of a company may be liable on contracts made by other promoters prior to formation of the company as if the promoters were partners, Lentz has not cited any authority to suggest that liability should be imposed on one promoter because of another promoter's conduct *after* the formation of the company. *See Bank of De Soto v. Reed*, 50 Tex. Civ. App. 102, 109–10, 109 S.W. 256, 260 (1908, no writ) ("It is a general principle that *until a corporation is legally organized* the co-adventures will, as to third persons, be liable as partners for all debts contracted on behalf of the aggregated body with their consent, express or implied." (emphasis added)).[4] The mere fact that promoters of a company engage in conduct to further the company's

---

[4] *See also* 20 Robert W. Hamilton et al., *Texas Practice Series: Business Organizations* § 19.2 (2d ed. 2004) (suggesting courts will draw on corporation-promoter cases to resolve LLC-promoter issues).

formation and business does not per se establish a partnership under the Texas Business Organizations Code so that partner-like liability of promoters may be extended beyond the date of the company's formation.

## III. Factual Sufficiency

When conducting a factual sufficiency review, we consider and weigh all of the evidence presented at trial. *TH Invs.*, 218 S.W.3d at 190; *see Dow Chem.*, 46 S.W.3d at 242. When an appellant challenges the factual sufficiency of an adverse finding on an issue for which the appellant had the burden of proof, the appellant must demonstrate that the finding is against the great weight and preponderance of the evidence. *Dow Chem.*, 46 S.W.3d at 242; *TH Invs.*, 218 S.W.3d at 190. We will set aside a verdict only if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem.*, 46 S.W.3d at 242.

As discussed above, Lentz had the burden to establish the existence of a partnership; thus, Lentz must show that the trial court's finding of no partnership is against the great weight and preponderance of the evidence. We have reviewed all of the evidence and found that there is some uncontroverted evidence weighing against the trial court's finding — namely, evidence of Brown and Wilkins's agreement to split profits and their rights to participate in the control of the business. But there also is some uncontroverted evidence weighing in favor the trial court's finding — only Brown contributed money or property to the business. Further, there is some controverted evidence weighing both against and in favor of the trial court's finding — in particular, evidence of the expressions of intent to form a partnership and the formation of an LLC to carry out the business. Finally, there is no evidence that the parties agreed to share losses of the business or liability for claims by third parties. Under these circumstances, we do not believe the trial court's finding of no partnership is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust.

Lentz's second and third issues are overruled.

**CONCLUSION**

Brown did not judicially admit the existence of a partnership, and Lentz waived this argument by failing to object to evidence contrary to the alleged admission. The evidence in this case does not conclusively establish the existence of a partnership between Brown and Wilkins, and the trial court's finding of no partnership is not against the great weight and preponderance of the evidence. Having overruled all of Lentz's issues, we affirm the trial court's judgment.


/s/     William J. Boyce
              Justice


Panel consists of Chief Justice Hedges and Justices Seymore and Boyce.

11